TODD B. BORDERS
v.
SHERIFF J. AUSTIN DANIEL AND DEPUTY SHERIFF MICHAEL JOHNSON.
No. 2007 CA 0340.
Court of Appeal of Louisiana, First Circuit.
December 21, 2007.
NOT DESIGNATED FOR PUBLICATION.
JEAN-PAUL LAYRISSON, TIMOTHY D. SCANDURRO, Attorneys for Plaintiff-Appellant, Todd B. Borders.
LLOYD F. SHROEDER, II, CRAIG E. FROSCH, Attorneys for Defendants-Appellees, Sheriff J. Austin Daniel and Deputy Sheriff Michael Johnson.
Before CARTER, C.J., PETTIGREW, and WELCH, JJ.
PETTIGREW, J.
This is an action in tort for personal injuries allegedly sustained by one public employee as a result of the negligence of a fellow employee and the sheriff who employed them.[1] Following a bench trial that resulted in the dismissal of his suit, the plaintiff-employee has appealed. We affirm.

FACTS
On July 25, 2001, Sergeant Michael Johnson, a dispatcher with the West Feliciana Parish Sheriff's Office, received a 911-emergency telephone call from Maria Price who advised that her husband, Nick Price, was attempting to commit suicide at their residence in a campground. Sergeant Johnson dispatched Deputy Todd Borders, plaintiff herein, and an EMS ambulance to respond to a Signal 24 (i.e., a medical assist call) at the Green Acres RV Park.[2]
Upon his arrival at the Green Acres campground, Deputy Borders drove around the grounds in an attempt to locate a person in need of assistance. As he drove through the campground, Deputy Borders did not see anyone requiring assistance. While circling the campground, waiting for the ambulance to arrive, Deputy Borders was hailed by a passing motorist. The motorist related that she had observed someone down the road from the campground run out into the road and throw objects at her car. Thinking that this had been someone attempting to flag down assistance, Deputy Borders radioed his supervisor, Sergeant Peters, and advised Sergeant Peters what the motorist had told him. Sergeant Peters instructed Deputy Borders to ride down Louisiana Highway 965 and investigate once an ambulance arrived at the campground.
When the ambulance arrived, Deputy Borders advised the emergency medical personnel that he intended to investigate the incident described by the motorist, and would return shortly. Proceeding to the area described by the motorist, Deputy Borders activated his vehicle floodlight and observed two males and a female leaning against the guard rail of a bridge behind a stationary vehicle. The vehicle was situated partially on the roadway and partially on the shoulder of the road. Deputy Borders passed the bridge where the three were seated and turned his patrol car around so as to approach the parked vehicle from the rear.
Upon approaching the parked vehicle, Deputy Borders could discern a woman and a man running towards him. They were speaking very excitedly and he was unable to understand what they were saying. Stepping out of his patrol car, Deputy Borders twice ordered the pair to stop and explain, but to no avail. At that point, Deputy Borders was surprised and attacked by the third person, subsequently identified as Nick Price.
Mr. Price lunged at Deputy Borders with force sufficient to push him back onto the hood of his patrol car and, screaming threatening obscenities, attempted to take Deputy Border's weapon from its holster. After a struggle with not only Mr. Price, but also with his male companion, Deputy Borders managed to radio for assistance. Deputy Borders was thereafter able to subdue Mr. Price and confine him in the back of the patrol car where Mr. Price continued to thrash wildly.
Other deputies later arrived to assist Deputy Borders; however, Mr. Price was already handcuffed in the backseat of Deputy Borders' patrol car. Deputy Borders was instructed by Sergeant Peters to transport Mr. Price to the West Feliciana Hospital for evaluation. Deputy Borders testified that on his way to the hospital, he first noticed symptoms of injuries he sustained when he was attacked by Mr. Price. Deputy Borders was subsequently hospitalized himself and ultimately underwent a lumber fusion.
Despite the fact that he was not able to work full-time, Deputy Borders continued to receive his full salary from the date of the incident through December 1, 2003. At that time, Sheriff Daniel placed Deputy Borders on part-time status. Deputy Borders thereafter resigned his position at the sheriff's office.
On July 24, 2002, Mr. Borders instituted this action against J. Austin Daniel, Sheriff of West Feliciana ("Sheriff Danier), and Deputy Michael Johnson, the dispatcher who took the call from Maria Price and dispatched Deputy Borders to the scene. In his petition, Deputy Borders alleged that the above-named defendants were negligent in failing to advise him that he was being dispatched to a suicide call rather than a medical assist call, failing to monitor the radio transmissions, and failing to provide proper support in a dangerous situation. Deputy Borders further alleged that said defendants are therefore liable for the damages he sustained when he was attacked by Mr. Price.
On August 13, 2002, Sheriff Daniel and Deputy Johnson moved to strike the jury demand pursuant to the provisions of La. R.S. 13:5105[3] and La. R.S. 13:1501.[4] Mr. Borders thereafter consented to the motion to strike the jury in this matter. A bench trial was held in this matter on September 18-19, 2006. At the close of the evidence, the trial court requested that the parties submit post-trial memoranda.
On October 11, 2006, the trial court rendered judgment together with written reasons. The trial court found that although Sergeant Johnson may have breached his duty to advise Deputy Borders that the original Signal 24 involved a potential suicide, Sergeant Johnson's acts or omissions were not the cause of the injuries sustained by Deputy Borders. The trial court dismissed the petition of Deputy Borders at his cost. From that judgment, Deputy Borders has appealed.

ANALYSIS AND LAW
The Louisiana Constitution of 1974 provides that the appellate jurisdiction of the courts of appeal extends to both law and facts. La. Const., art. V, § 10(B). A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that is manifestly erroneous or clearly wrong. See Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882, n. 2 (La. 1993). If the trial court or jury findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989).
When findings are based on determinations regarding the credibility of witnesses, the manifest error  clearly wrong standard demands great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Id. Where documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, a court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact finder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. RoseII, 549 So.2d at 844-45.
In the case presently before this court, Deputy Borders bases his theory of recovery on the proposition that the Signal 24 request for medical assistance and the altercation on the bridge were one and the same, because the individual who attacked Deputy Borders turned out to be the same person for whom the call for medical assistance was issued.
The initial issue presented to this court by Deputy Borders is that the trial court committed legal error in concluding that the negligence of Sergeant Johnson was not the legal cause of the injuries sustained by Deputy Borders. The second issue presented by Deputy Borders is whether the trial court was manifestly erroneous in deciding any factual issues against Deputy Borders.
In its written reasons for judgment, the trial court noted that although Sergeant "Johnson testified that he informed Deputy Borders that he was sending him to the scene of an attempted suicide ... [a]ll other evidence on that point is contrary." The trial court also noted that the station log, which was introduced as an exhibit at trial indicated that Deputy Borders had been on a "Signal 24," which is the code for a medical assist call, not an attempted suicide. The trial court further noted that Deputy Borders and the other deputies who were monitoring the radio transmissions at the time of the dispatch all testified that they heard no mention of suicide. The trial court concluded that "the evidence indicates that [Sergeant] Johnson knew that the complaint involved an attempted suicide but failed to notify [Deputy] Borders that he was being dispatched to the scene of an attempted suicide and, thereby breached his duty to Deputy Borders to act reasonably."
In their brief to this court, defendants point out that the plaintiff in a negligence action must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection afforded by the duty breached. See Berry v. State, through Department of Health and Human Resources, 93-2748, pp. 4-5, 637 So.2d 412, 414 (La. 5/23/94). Defendants further assert that a negative answer to any of the inquiries of the duty/risk analysis results in a determination of no liability. See Mathieu v. Imperial Toy Corporation, 94-0952, p. 11, 646 So.2d 318, 326 (La. 11/30/94).
In resolving the issue of causation, the trial court opined:
The cause issue is not so easily resolved. The question is whether the breach of [Sergeant] Johnson's duty to act reasonably is the legal cause of the injuries sustained by [Deputy] Borders. Put another way, would the injuries to [Deputy] Borders have been sustained even if [Sergeant] Johnson had informed him that he was responding to an attempted suicide? For the following reasons, I find that the evidence indicates the injuries would probably have been sustained regardless of how the dispatcher characterized the initial call; and, therefore, the breach of [Sergeant] Johnson's duty was not the legal cause of the injuries suffered by the plaintiff.
From Exhibit P-2 the complaint form completed by [Sergeant] Johnson  it is clear that Maria Price told [Sergeant] Johnson that Nick Price was trying to commit suicide "at residence" and gave the location as "Green Acres Campground." It does not say that the incident was occurring near the campground or on or near the highway or a bridge. Both [Deputy] Borders and emergency medical personnel were dispatched to a specific location, the campground. They were unable to find anyone in distress there. [Deputy] Borders decided to leave the campground to investigate the charge that someone was throwing objects at passing vehicles. He testified that, as he informed the medical technicians in the ambulance of his intention to leave, one responded with an obscenity questioning [Deputy] Borders' decision to leave the campground. [Deputy] Borders testified that he was well acquainted with the medical personnel but did not understand the meaning of the response. It is evident, however, that the people in the ambulance considered his departure as abandonment of the initial call when they expected him to stay to aide them in locating the problem at the campground. That is only relevant considering Borders' testimony that he didn't know if the activity at the bridge reported by the passing motorist was related to the initial dispatch to the campground or not. The people in the ambulance clearly didn't think the activity away from the campground was related to the initial call or that the departure if [sic] the deputy was appropriate. It also seems probable that [Deputy] Borders would have asked the medical people to follow him if he thought that the incident at the bridge was related to the initial call in any manner whether medical or attempted suicide. There was conflicting evidence as to the distance between the campground and the bridge. [Deputy] Borders testified that the distance was two tenths of a mile. Sheriff Daniel testified that he checked the distance on the day of trial and it was over four tenths of a mile but less than five tenths of a mile. In deposition, [Sergeant] Peters testified that the distance was four tenths of a mile. The actual distance, whether two tenths or four tenths of a mile is not critical. The question is whether it is reasonable for one to assume that a medical call or a suicide call to a specific location ("at residence" at "Green Acres Campground") could be related to report of someone waving his arms and throwing things at passing vehicles two tenths or four tenths of a mile away on a bridge. I find it is not reasonable. The evidence does not support [Deputy] Borders' assertion that he was uncertain if the activity away from the campground was related to the initial call or not. It is probable that [Deputy Borders] did not see any relationship between the claim of the passing motorist and the call that dispatched him to the campground initially. It is more probable that upon finding no one in distress at the location of the first call, considering that the medical people were at the scene, and faced with the appeal from the passing motorist, [Deputy Borders] thought that it was important to abandon the campground call and investigate the incident at the bridge. It is possible that [Deputy] Borders might have made the connection that the incident on the bridge was related to the call to the campground had he been informed that it involved an attempted suicide. It is more likely that having been informed of the potential suicide at the campground, he would have been more reluctant to leave. Either conclusion is speculative. [Italics contained in original text].
The initial call, whether it was a medical assist call or even if it had been an attempted suicide call was terminated by Deputy Borders when he left the campground. That conclusion is fortified by the fact the [sic] [Deputy] Borders notified the dispatcher that he was leaving the campground.
. . . .
The situation encountered at the bridge would have been the same regardless of the nature of the initial call. Assuming that the initial call placed all concerned on notice that there was an attempted suicide at a residence at the campground, the determination of what might have happened after [Deputy] Borders left the campground  whether another deputy might have followed [Deputy] Borders to the bridge or might have stayed at the campground to assist the medical personnel or might have arrived at the bridge in time to stop or prevent the attack  is just speculation. It is impossible to conclude that a prior warning of a possible suicide probably would have prevented or mitigated the attack on [Deputy Borders].
Though [Sergeant] Johnson may not be blameless, his failure to inform [Deputy] Borders of the attempted suicide or to send two deputies was not the cause of the harm that came to [Deputy] Borders. The legal cause of the injuries to [Deputy] Borders was the acts of Nick Price in attacking [Deputy] Borders and the acts of [Mr.] Price's companion who attempted to pull [Deputy] Borders off [Mr.] Price during the struggle.
Based on our review of the record in this matter, we find no evidence that would have alerted a reasonable law enforcement officer that the Signal 24 dispatch (whether for medical assistance or attempted suicide) to a residence in a campground was causally connected to the incident reported by the motorist that some distance away a person was running into the road and throwing things at passing vehicles. Moreover, Deputy Borders related in his testimony that when medical personnel arrived at the campground, he advised them that he would "be right back," inferring that it was more important that medical personnel remain at the scene where they were dispatched. Additionally, George J. Armbruster, an expert witness in police procedures and protocol who appeared at trial on behalf of Deputy Borders, conceded that a motorist's complaint of a person in the road throwing rocks at her car would not "in and of itself" place a law enforcement officer on notice that said incident was in the nature of a medical call or a suicide call. Therefore we must conclude that the duty of a sheriff's dispatcher to advise responding officers that a call for assistance at a residence in a campground involved a possible suicide attempt did not encompass the risk that an officer might be seriously injured by the same suicidal suspect while responding to a subsequent report, involving an individual throwing things at vehicles passing on a roadway some distance away.

CONCLUSION
After a thorough review of the record in this matter, we decline to say that any negligence attributable to Sergeant Johnson was a cause-in-fact of the injuries allegedly sustained by Deputy Borders. Accordingly, the judgment of the trial court that resulted in the dismissal of the negligence action filed on behalf of Deputy Borders is hereby affirmed. All costs associated with this appeal shall be assessed against plaintiff-appellant, Todd B. Borders.
AFFIRMED.
NOTES
[1] Pursuant to the provisions of La. R.S. 23:1034(B), sheriff's deputies are exempted from the exclusivity of the Louisiana Worker's Compensation statutes that would ordinarily prevent a plaintiff from filing suit in tort for work-related injuries against an employer.
[2] The parties dispute whether Sergeant Johnson informed Deputy Borders that the call was for a possible suicide, but it is undisputed that Deputy Borders was dispatched unassisted to respond to the complaint. It is well-known procedure within the sheriff's office to always send more than one deputy in response to a suicide call.
[3] La. R.S. 13:5105 provides that no suit against a political subdivision shall be tried by a jury.
[4] La. R.S. 13:5101 makes it clear that sheriff's deputies are also covered by La. R.S. 13:5105.